UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| MARY MCGRATH )<br>    Plaintiff )<br> )<br>v. )<br> )<br> )<br>UNITED COLLECTION BUREAU, INC., )<br>JOHN DOE #1 a/k/a Oliver, )<br>& JOHN DOE #2 a/k/a Dustin )<br>    Defendant )<br> ) | CIVIL ACTION<br><br>COMPLAINT<br><br>JURY TRIAL<br>CLAIMED<br><br><br><br><br>JUNE 12, 2009 |

## COMPLAINT

### I. INTRODUCTION

1. This is a suit brought by a consumer who has been harassed and abused by Defendant collection agency. This action is for violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. § 42-110a et seq., and for intentional infliction of emotional distress, fraud, and forgery.

### II. PARTIES

2. The plaintiff, Mary McGrath, is a natural person who resided in Ledyard, Connecticut at the time of the allegations contained herein.

3. The defendant, United Collection Bureau, Inc., ("UCB"), is an Ohio corporation with its headquarters in Toledo, Ohio and is licensed by the Connecticut Department of Banking as a Consumer Collection Agency.

4. John Doe #1 a/k/a Oliver ("Oliver") is an employee of UCB who works as a debt collector. Oliver's identity and state of residence are not known to Plaintiff but are ascertainable in discovery.

5. John Doe #2 a/k/a Dustin ("Dustin") is an employee of UCB who works as a debt collector. Oliver's identity and state of residence are not known to Plaintiff but are ascertainable in discovery.

### III. JURISDICTION

6. Jurisdiction in this Court is proper pursuant to 15 U.S.C. § 1692k(d), 28 U.S.C. §§ 1331 and 1337, and Fed. R. Civ. P. 18(a).

7. This Court has jurisdiction over UCB because it engages in debt collection activities within Connecticut.

8. Venue in this Court is proper, as the Plaintiff is a resident of Connecticut and the acts complained of occurred in this state.

### IV. FACTUAL ALLEGATIONS

9. Plaintiff owed a debt to Cashcall.

10. The Cashcall loan associated with the Cashcall debt was in Plaintiff's name only.

11. In the beginning of March 2009, Plaintiff telephoned Cashcall in response to a letter she had received from Cashcall offering to settle her debt for one lump sum payment of $922, and during that call, Cashcall informed Plaintiff that it had turned over the account to UCB for collection purposes.

12. On or around March 16, 2009, Plaintiff called UCB and spoke with a UCB representative named "Oliver," and during that conversation, Plaintiff mentioned to Oliver the aforementioned settlement offer letter she had received from Cashcall.

13. Oliver told Plaintiff to fax the letter she had received from Cashcall, and he said UCB would honor the offer she had received from Cashcall, and that she could pay it in two lump sum payments, but only if she allowed UCB to take the money out automatically from her checking account.

14. Believing him, Plaintiff provided Oliver with information for her checking account at Rockland Trust Bank.

15. After taking Plaintiff's checking account information, Oliver told Plaintiff that he needed to verify the terms of their agreement, at which point he transferred Plaintiff to his supervisor, "Dustin."

16. When Dustin got on the line, he informed Plaintiff that the aforementioned settlement was not approved, and he said he would have to phone Cashcall and get back to Plaintiff.

17. Hearing this, Plaintiff told Dustin that she revoked the authorization she had given Oliver to automatically withdraw money from her checking account, and she said she refused to provide such authorization until UCB sent her an official letter agreeing to the terms of the settlement as discussed.

18. Dustin said UCB would agree to Plaintiff's condition and would send her the letter she requested.

19. On or around March 23, 2009, Plaintiff received a letter from UCB stating that Plaintiff owed $5,700 on the Cashcall account; the letter contained no mention of settlement pursuant to the terms Plaintiff had discussed with Oliver and Dustin on the phone.

20. Worried that UCB never actually intended to settle the debt and made false representations for the sole purpose of obtaining Plaintiff's bank account information, on or around March 24, 2009, Plaintiff called UCB multiple times and left messages clearly stating that the settlement arrangement was off and under no condition was UCB to take out any money from her bank account.

21. On or around March 26, 2009, Plaintiff called UCB and spoke with Oliver, and during that conversation, she told Oliver that UCB was not authorized to take money automatically from her bank account.

22. During that same phone call, Dustin got on the phone and demanded that Plaintiff make payments to UCB in amounts she could not afford, and when Plaintiff said she would not agree to make said payments, Dustin told her that he was pulling her credit reports as they spoke, and he said that he was also going to pull her husband's credit report and use it find out where he works and call Plaintiff's husband at his workplace.

23. Dustin's threat to call Plaintiff's husband at his place of work seriously worried Plaintiff, since her husband worked in the military, and such calls to his workplace could jeopardize his security clearance.

24. Fearing that UCB intended to call her husband at work, and feeling under duress, Plaintiff reluctantly agreed to UCB's demand that it be allowed to automatically withdraw from Plaintiff's checking account 5 payments of $462 each.

25. After consulting with her undersigned attorneys, Plaintiff called UCB on or around Mach 30, 2009 and told both Oliver and Dustin that UCB was not authorized to make any automatic withdrawals whatsoever from her bank account.

26. On March 30, 2009, Plaintiff's attorney sent UCB by fax a cease and desist and attorney representation letter; Plaintiff's attorney faxed a similar letter to UCB on March 31, 2009. Both letters requested that UCB provide Plaintiff's attorneys with verification of the debt.

27. On April 6, 2009, Oliver called Plaintiff and left on her answering machine a message stating that UCB was "clueless" and needed to know "where they stood with things. "

28. Oliver called and left another message on April 7, 2009 asking Plaintiff to give UCB a call to "figure out where they are with this."

29. UCB continued to make attempts to electronically withdraw money from Plaintiff's checking account, but UCB could not successfully do so because Plaintiff had instructed her bank to block any such attempts.

30. On or around May 22, 2009, UCB created a forged check and applied it to Plaintiff's bank to debit $462 from Plaintiff's checking account; the fraud department of Plaintiff's bank subsequently recovered said amount, and it is now being held in a special suspended account of the bank's pending further review.

31. On or around May 26, 2009, Plaintiff received from UCB a collection letter dated May 20, 2009, which letter stated that, per Plaintiff's authorization, UCB intended to deposit a post dated check or debit her bank account in the amount of $462.

32. On or around May 26, 2009, Plaintiff called UCB and spoke with Dustin, and she emphatically stated that UCB was not to be taking any money whatsoever from her bank account, and she demanded to know why UCB was still contacting her since her attorneys had sent UCB representation letters.

33. Dustin called Plaintiff a liar and claimed that said representation letters were never sent to UCB, and he also claimed that Plaintiff had authorized UCB to make withdrawals from her bank account.

34. Upset by Dustin's misrepresentations, Plaintiff told Dustin that UCB was not to contact her anymore, and she hung up.

35. As of the date of this complaint, UCB has still not provided Plaintiff or her attorneys with verification of the debt.

## V.  COUNT ONE
### Fair Debt Collection Practices Act - UCB

36. Plaintiff incorporates Paragraphs 1-35.

37. UCB violated the FDCPA in one or more of the following respects:

    a.    UCB violated 15 U.S.C. § 1692e(5) by threatening to pull Plaintiff's husband's credit report when it was unauthorized to do so.

    b.    UCB violated 15 U.S.C. § 1692c(a)(2) by continuing to contact Plaintiff even though it knew or should have known that Plaintiff was represented by an attorney regarding the debt.

    c.    UCB violated 15 U.S.C. § 1692e(10) by deceptively misrepresenting to Plaintiff that a settlement had been approved pursuant to the letter Plaintiff had received from Cashcall.

    d.    UCB violated 15 U.S.C. § 1692g by continuing its collection efforts without having first provided the requested verification to Plaintiff's attorneys.

    e.    UCB violated 15 U.S.C. § 1692d(1) by threatening to call Plaintiff's husband at his workplace, when such purported action was intended as a threat to harm the reputation of Plaintiff's husband.

  f. UCB violated 15 U.S.C. § 1692f(1) by withdrawing or attempting to withdraw unauthorized funds from Plaintiff's bank account.

  g. UCB violated 15 U.S.C. § 1692e(10) by attempting to make an unauthorized withdrawal from Plaintiff's bank account with the use of a forged check.

## VI. COUNT TWO
### Fair Debt Collection Practices Act - Oliver

38. Plaintiff incorporates Paragraphs 1-35.

39. Oliver violated the FDCPA for the reasons enumerated in Paragraph 36a-g, described above.

## VII. COUNT THREE
### Fair Debt Collection Practices Act – Dustin

40. Plaintiff incorporates Paragraphs 1-35.

41. Dustin violated the FDCPA for the reasons enumerated in Paragraph 36a-g, described above.

## VIII. COUNT FOUR
### Intentional Infliction of Emotional Distress- UCB, Oliver, & Dustin

42. Plaintiff incorporates Paragraphs 1-35.

43. UCB, Oliver, and Dustin knew, or reasonably should have known, that their conduct would likely cause emotional distress to Plaintiff.

44. UCB's, Oliver's, and Dustin's conduct did cause Plaintiff to suffer emotional distress, embarrassment, shame, stress and anxiety.

45. UCB's, Oliver's, and Dustin's actions were willful, wanton and malicious, in that they intended to cause Plaintiff distress to induce Plaintiff to pay the debt, in hopes that Plaintiff would pay in order to relieve the stress.

## IX. COUNT FIVE
### Forgery - UCB

46. Plaintiff incorporates Paragraphs 1-35.

47. UCB committed forgery and intentionally defrauded Plaintiff when it created a fake check for the purposes of performing an unauthorized transaction to withdraw $462 from Plaintiff's bank account and applied that check to Plaintiff's bank and illegally withdrew $462.

48. UCB is liable to Plaintiff for double damages pursuant to Conn. Gen. Stat. § 52-565.

## X. COUNT SIX
### Fraud - UCB

49. Plaintiff incorporates Paragraphs 1-35.

50. UCB Committed Fraud by creating a fake check for the purposes of performing an unauthorized transaction to withdraw $462 from Plaintiff's bank account and applied that check to Plaintiff's bank and illegally withdrew $462.

51. UCB committed this fraud for the purpose of processing the transaction and collecting the debt.

52. UCB is liable to Plaintiff for her damages.

## XI. COUNT SEVEN
### Connecticut Unfair Trade Practices Act - UCB

53. Plaintiff incorporates Paragraphs 1-35.

54. UCB violated CUTPA by its debt collection activities described above.

55. Plaintiff suffered an ascertainable loss in the form of potential lost interest on the $462 that was wrongly removed from her account by UCB and is now being held in a suspended account by her bank.

56. UCB's acts as described above were unfair, immoral, unethical, oppressive and unscrupulous and such as such to cause substantial injury to consumers.

WHEREFORE, the Plaintiff prays for the following relief:

Monetary damages related to Plaintiff's emotional distress; Actual damages, statutory damages, and attorney's fees and costs pursuant to 15 U.S.C. § 1692k; monetary damages pursuant to Conn. Gen. Stat. §42-110g; punitive damages pursuant to Conn. Gen. Stat. § 42-110g; attorney's fees and costs pursuant to Conn. Gen. Stat. § 42-110g; double damages for Plaintiff's forgery claim; and such other relief as this Court deems appropriate.

**PLAINTIFF, MARY MCGRATH**

By: _/s/ Daniel S. Blinn_
Daniel S. Blinn, ct02188
Matthew W. Graeber, ct27545
dblinn@consumerlawgroup.com
Consumer Law Group, LLC
35 Cold Spring Rd. Suite 512
Rocky Hill, CT 06067
Tel. (860) 571-0408; Fax. (860) 571-7457